PORTER (CENTENNIAL CATALOGUE CO. v.). See Case No. 2,546.

PORTER v. The FRIENDSHIP. See Case No. 10,783.

PORTER (GEORGETOWN v.). See Case No. 5,346.

PORTER (HOFFMAN v.). See Case No. 6,-577.

PORTER (JACKSON v.). See Case No. 7,-143.

PORTER (JASPER v.). See Case No. 7,229.

PORTER (JENKINS v.). See Case No. 7,274.

## Case No. 11,287.

### PORTER v. MARSTELLER.

[1 Cranch, C. C. 129.] [1]

Circuit Court, District of Columbia. June Term, 1803.

OFFICE JUDGMENT—MOTION TO SET ASIDE.

On motion to set aside an office judgment upon an injunction bond, the court will not suffer the defendant to plead that the obligee was dead at the time of the execution of the bond.

Motion to set aside office judgment, and file certain pleas, in an action of debt for the penalty of an injunction bond. All the pleas were admitted except the second, which was that the obligee was dead before the execution of the bond, and so the bond void. This plea was refused, on the ground that the obligor had received the full benefit of his injunction upon the bond, and ought not now to be permitted, ex gratia, to avoid it by such a plea.

## Case No. 11,288.

### PORTER v. RAPINE.

[2 Cranch, C. C. 47.] [1]

Circuit Court, District of Columbia. June Term, 1812.

JUSTICE OF THE PEACE—JURISDICTION — AMOUNT.

A creditor may give a credit upon his account so as to give jurisdiction to a justice of the peace.

Appeal from a justice of the peace. Rapine had a demand on Porter for $26.85. He gave credit for $6.85 and warranted Porter for $20, and obtained judgment for $20 and costs. Porter appealed and contended that Rapine had no right to release part of the debt so as to give jurisdiction to a justice of the peace. It did not appear that he objected to the credit before the justice.

THE COURT (FITZHUGH, Circuit Judge, absent) affirmed the judgment.

[2] [From 6 Ins. Law J. 928.]
[1] [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 11,289.

### PORTER et al. v. The SEA WITCH.

[3 Woods, 75.] [1]

Circuit Court, D. Louisiana. April Term, 1877.

MARITIME LIENS—PILOTAGE AND TOWAGE—CLAIMS ARISING FROM DIFFERENT VOYAGES—PRIORITY.

1. Pilotage and towage into port stand in the same rank of maritime liens with necessary supplies and repairs.

2. But a claim for towage furnished in one voyage has a lien superior to a claim for supplies furnished on a previous voyage.

[Cited in The Lillie Laurie, 50 Fed. 221.]

[Appeal from the district court of the United States for the district of Louisiana.]

The Sea Witch was a foreign vessel which sailed from Belize, Honduras, on a coasting voyage, about September 16, 1876. She left Ruatan on Nov. 1, 1876, and reached the port of New Orleans, where she was seized and sold under process in this case. The claim of the libelant J. H. Porter was for a sail furnished the Sea Witch at Pensacola, Florida, on June 24, 1876. E. C. Lyle, an intervener, claimed for supplies furnished at Mobile, on December 1, 1875. The Ocean Tow Boat Company intervened upon a claim for towage due for towing the Sea Witch from the mouth of the Mississippi river to New Orleans upon her last voyage at the close of which she was seized in this case. The proceeds of the sale of the vessel were not sufficient to pay all the maritime liens, and a question arose between the Ocean Tow Boat Company and the other two creditors above mentioned, whether the claims of the former were entitled to priority of payment.

C. B. Singleton and R. H. Browne, for libelants.

Jos. P. Hornor, W. S. Benedict, and E. D. Craig, for interveners.

WOODS, Circuit Judge. There can be no serious question that pilotage and towage into port, etc., stand in the same rank with necessary supplies and repairs when furnished for the same voyage: The Emily Souder, 17 Wall. [84 U. S.] 666. But the contention here is, that as the towage was furnished on the last voyage of the schooner, and the claims of Porter and Lyle were for supplies furnished on previous voyages, the claim for towage is entitled to priority of payment. This claim seems to be sustained by the adjudged cases.

In The Paragon [Case No. 10,708], Judge Ware remarks: "The priority of the privilege for seaman's wages stands upon a principle affecting all privileged debts, that is, that among these creditors he shall be preferred who has contributed most immediately to the preservation of the thing. 2 Valin. Comm. 12, liv. 3, tit. 5, art. 10. It is upon this principle that the last bottomry bond is

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

preferred to those of older date, and that repairs and supplies furnished a vessel on her last voyage take precedence of those furnished in a prior voyage, and that the wages of the crew are preferred to all other claims, because it is by their labors that the common pledge of all these debts has been preserved and brought to a place of safety." The same principle is recognized in The Trimountain [Case No. 14,175].

In the case of The Hope, reported in 1 Asp. 563, it was held that maritime liens are entitled to rank against the fund in the inverse order of their attachment upon the res, or that the later in·time is the earlier in payment. In that case, it was also decided that the master's wages, which, by the merchants' shipping act of 1854, had been placed on the same footing as seamen's wages, were inferior in rank to a bottomry bond given upon the vessel on a voyage subsequent to that on which the wages were earned.

These and other authorities which might be cited show that wages earned and supplies furnished for the later voyage take rank as to priority of payment over wages and supplies earned or furnished for a former voyage. Whether this rule should apply to the short and frequent trips of river steamers, it is not necessary now to decide. As the pilotage was earned on the last voyage of the Sea Witch, and the supplies of libelant and intervener were furnished for former voyages, I am of opinion that the Ocean Tow Boat Company should be paid first out of the proceeds of the sale; that the residue of the fund, if any, should be applied first to the payment of the claim of Porter, and then to the payment of the claim of Lyle. Decree accordingly.